CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

OCT 3, 2024

LAURA A. AUSTIN, CLERK
BY:
        s/B. McAbee
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| SAMMIE TODD MOSER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:24-cv-00010 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| THE HALIFAX COUNTY, VA, BOARD | ) | By:    Hon. Thomas T. Cullen |
| OF SUPERVISORS and THE VIRGINIA | ) |        United States District Judge |
| RETIREMENT SYSTEM, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Sammie Todd Moser ("Moser") brought this action against Defendants the Halifax County, VA, Board of Supervisors ("the Board") and the Virginia Retirement System ("VRS"). (*See generally* Compl. [ECF No. 1].) Under Virginia law, state employees are entitled to participate in a retirement plan administered by the state. One element of that plan, though, dictates that, if an employee is convicted of a felony, he will forfeit the state's contribution to his retirement account (although he is entitled to a refund of any personal contributions, plus interest). After Moser was convicted of embezzling state funds while he served as the Halifax County Animal Control Warden, the Board determined that he was no longer entitled to retirement benefits under the VRS. Moser contends that decision—and the statutory scheme that stripped him of the state's contributions to his retirement—violate his constitutional rights.

This matter is before the court on the Board's motion to dismiss for lack of jurisdiction and for failure to state a claim.[1] (Mot. Dismiss [ECF No. 8].) The motion has been fully briefed by the parties, and the court heard argument on the motion on September 30, 2024. For the reasons discussed below, the court finds that Moser's claims against the Board are barred by the doctrine of *res judicata* and that Moser does not seek any relief from the Board. Accordingly, the Board's motion to dismiss will be granted.

## I.   STATEMENT OF FACTS

The following facts are either undisputed or presented in the light most favorable to Moser, the nonmoving party. *See Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013).

Like most employers, Virginia has established a retirement system for state employees.[2] Under that program, employees and the state jointly contribute to an interest-bearing retirement account that is payable to the employee, over time, at his retirement. But Virginia law provides that a person who has elected to participate in the retirement system is not entitled to receive retirement benefits under the VRS if "(i) he is convicted of a felony and (ii) the person's employer determines that the felony arose from misconduct occurring . . . in any position in which the person was a member covered for retirement purposes under any retirement system administered by the Board [of Trustees of the Virginia Retirement System]." Va. Code Ann. § 51.1-124.13(A); *see id.* § 51.1-125(A) (stating that eligible employees "shall be

---

[1] VRS is not a party to the motion and has not moved to dismiss the claims asserted against it.

[2] Moser's complaint omits many salient, relevant, and necessary details. For example, outside of the caption of the case, he does not mention the Board at all. The court would be justified in dismissing the claims against the Board on that basis alone, as Moser does not allege any action or inaction by the Board that violated his constitutional rights. But the court takes judicial notice of the statutory scheme at issue, as well as the state-court proceedings that lay out the relevant facts, giving the court an adequate basis to understand Moser's claims.

members of the retirement system" unless they "elect[] not to participate"). If an employer determines that an employee's misconduct falls within the provision, the employee can appeal that determination to the appropriate state circuit court, but "no further proceedings shall follow the decision of the circuit court." *Id.*

Moser served in VRS-covered law enforcement jobs in Halifax County for 26 years. (Compl. ¶ 3.) In 2022, he was convicted of two felonies for embezzling funds from the Halifax County Animal Shelter while he served as the County's Animal Control Warden. (*Id.* ¶ 4.) The Board—Moser's employer—then followed the procedure set out in § 51.1-124.13, and determined that, because Moser had been convicted of felonies that arose from misconduct during his state employment, he was no longer entitled to receive VRS benefits. (*See* Mem. Supp. Mot. Dismiss, Ex. A at 5–7 [ECF No. 9-1].)[3] Moser appealed that determination to the Halifax County Circuit Court. (*See id.* at 7.) In the circuit court, he argued that § 51.1-124.13 deprived him of due process in violation of the Fourteenth Amendment, and that the forfeiture of his retirement benefits is an excessive fine in violation of the Eighth Amendment. (*Id.*; Compl. at 3–6.)

During a hearing on Moser's appeal of the Board's decision, the circuit court stated the following with respect to Moser's due-process claim:

> [J]ust for this record, the due process argument, I think, clearly, that there was due process for Mr. Moser. He was given Notice, he appeared, he had his attorney there, he had a court reporter there and [was] given an opportunity to present any evidence or argument that they needed to be presented. And he did that, and

---

[3] The exhibits to the Memorandum in Support of the Motion to Dismiss are records of the proceedings in Halifax County Circuit Court. This court can take judicial notice of related proceedings in other courts, *see Corbitt v. Baltimore City Police Dep't*, 675 F. Supp. 3d 578, 586 (D. Md. 2023), and the court does so here to fill in the factual gaps in Moser's pleading.

> then he was notified of the decision by the Board and felt that
> they had the Right to Appeal. They've done that, and that's why
> we're here today. But I think, clearly . . . if the . . . Due Process
> argument is to be heard in this proceeding, I think clearly that he
> had due process under the law as far as the Constitutional
> objections of due process.

(Mem. Supp. Mot. Dismiss, Ex. A at 7.) Turning to the excessive-fines claim, the court stated:

> I've read [the United States Supreme Court's decision in *Timbs v.
> Indiana*, 586 U.S. 146 (2019)]. And in dealing with these facts of
> this case, the Statute, you know, does require Forfeiture o[f] the
> VRS Benefits. But it also allows a return of the contributions
> made by the employee plus interest. So even though the Statute,
> you know, it is somewhat a penalty, it also offsets the effects of
> this Statute by being able to return his benefits. . . . So—you
> know, I think this is distinguishable from the *Timbs* case for two
> reasons. This is really not an excessive punishment case because
> he's getting refunded some of these benefits plus
> interest. . . . [F]or the reasons the Court stated I'm going to
> overrule any objection on the Appeal. . . . [T]he Court finds the
> determination by the Board was correct, that there's no due
> process violation and no excessive penalty violation.

(*Id.* at 7–10.)

After the Halifax County Circuit Court affirmed the Board's determination, Moser

appealed, first to the Virginia Supreme Court, then to the United States Supreme Court. The

Virginia Supreme Court dismissed the appeal because the circuit court's order is not appealable

under § 51.1-124.13(b); by the statute's terms, the circuit court's decision is the final say. (*See*

Mem. Supp. Mot. Dismiss, Ex. C [ECF No. 9-3].) Moser appealed that determination to the

United States Supreme Court, but the Court denied his petition for writ of certiorari. *See Moser

v. Halifax Cnty. Bd. of Supervisors*, 144 S. Ct. 1033 (March 4, 2024).

On March 11, 2023, Moser filed the instant suit, again raising the Fourteenth

Amendment due-process claim and Eighth Amendment excessive-fines claim. (*See* Compl. at

- 4 -

3–6.) On April 29, 2024, the Board moved to dismiss the suit for lack of subject-matter jurisdiction and for failure to state a claim. (Mot. Dismiss; Mem. Supp. Mot. Dismiss [ECF No. 9].) Moser filed a memorandum in opposition on May 13 (Pl.'s Mem. Opp'n [ECF No. 14]), and the Board filed a reply on May 20 (Reply [ECF No. 15]). The court heard arguments on the motion on September 30, 2024. (ECF No. 17.)

## II.   STANDARD OF REVIEW

### A.  Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Motions to dismiss under Rule 12(b)(1) challenge the court's jurisdiction over the subject matter of the complaint. *Richmond, Fredricksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A defendant can challenge the court's subject-matter jurisdiction in one of two ways: (1) by asserting that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based"; or (2) by demonstrating that "the jurisdictional allegations of the complaint were not true." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

But "[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." *Bell v. Hood*, 327 U.S. 678, 682 (1946). When assessing subject-matter jurisdiction, courts must make sure to maintain "the distinction between two sometimes confused or conflated concepts: federal-court 'subject-matter' jurisdiction over a controversy; and the essential ingredients of a federal claim for relief." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006); *see Reddy v. Buttar*, 38 F.4th 393, 399 (4th Cir. 2022) (explaining that the merits question of whether a claim is valid "is something to be litigated and determined" and, as such, "does not go to the power of the court to make the determination—its subject matter jurisdiction").

- 5 -

## B.  Failure to State a Claim

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

## III.   ANALYSIS

"Without jurisdiction, the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Therefore, the court must assure itself that it has jurisdiction before turning to the parties' merits-based arguments. While the court finds that it has jurisdiction to hear this case, it also finds that Moser's claims are barred by the doctrine of *res judicata*.

## A.  Subject-Matter Jurisdiction

The Board advances three arguments as to why the court lacks subject-matter jurisdiction: (1) the *Rooker-Feldman* doctrine deprives the court of jurisdiction; (2) the court

should abstain from exercising its jurisdiction under the *Burford* abstention doctrine; and (3) Moser's claims are barred under the doctrine of substantiality. (Mem. Supp. Mot. Dismiss at 6–10.) None of these arguments is persuasive.

### i. *Rooker-Feldman*

Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine derives from the principle that federal district courts do not have appellate jurisdiction over state-court judgments; that power lies only with the Supreme Court. *Id.* at 283; *see* 28 U.S.C. § 1257; *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486 (1983). It follows that, where a litigant "in essence seek[s] appellate review of a state court decision by a federal district court in violation of *Rooker-Feldman*," the district court must dismiss the suit. *See Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 197 (4th Cir. 2000); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923) ("If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding.").

The Board argues that *Rooker-Feldman* applies in this case because Moser's claims are identical to claims made in and decided by the Halifax County Circuit Court when he appealed the Board's decision. (Reply at 2.) It therefore characterizes this suit as "the type of collateral

attack on a state[-]court decision the *Rooker-Feldman* doctrine is intended to prevent." (*Id.*) Moser argues that the doctrine does not apply because "[t]he only state court judgment rendered in this case never dealt with [Moser's] constitutional arguments." (Mem. Opp'n at 2.) Therefore, Moser says, because "there is no previous decision on the merits of this case," *Rooker-Feldman* does not deprive this court of jurisdiction. (*Id.*)

As explained below, the Halifax County Circuit Court did address Moser's constitutional arguments, but that alone does not warrant application of the *Rooker-Feldman* doctrine. *See Exxon*, 544 U.S. at 293 (explaining that the *Rooker-Feldman* doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court"); *see also Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 718 (4th Cir. 2006). Rather, the doctrine prohibits suits seeking redress for "injuries *caused by* state[-]court judgments." *Exxon*, 544 U.S. at 284 (emphasis added); *see Davani*, 434 F.3d at 718 ("*Exxon* requires us to examine whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself. If he is not challenging the state-court decision, the *Rooker-Feldman* doctrine does not apply.").

Here, Moser does not argue that his injury stems from the adverse state-court judgment. He does not allege, for example, that the circuit court's decision *itself* violates his due-process rights. In fact, Moser's Complaint does not make any mention of the state-court judgment. Rather, he continues to press the argument, as he did in state court, that the statute itself—and Defendants' application of the statute to him—violates the Constitution. (*See, e.g.*, Compl. at 4 ("Section 51.1-123.13 of the Code of Virginia is defective . . . .").) Accordingly,

because Moser does not contend that the state-court judgment (itself or in conjunction with Defendants' actions) caused his alleged injuries, *Rooker-Feldman* does not apply.

### ii. *Burford* Abstention

The Board next argues that the court should exercise its discretion under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), to abstain from exercising its jurisdiction in this case. As a general rule, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress," *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996), but the Supreme Court has held that federal courts can decline to exercise their jurisdiction in "'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest." *Id.* The *Burford* abstention doctrine lays out one such "exceptional circumstance"; it "permits abstention when federal adjudication would unduly intrude upon complex state administrative processes because either: (1) there are difficult questions of state law . . . whose importance transcends the result in the case then at bar; or (2) federal review would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) (cleaned up).

The Board argues that the VRS implements and oversees a complex regulatory scheme of the type at issue in *Burford*, and federal review would disrupt the Commonwealth's efforts to establish coherent policy with respect to the VRS, which, the Board argues, is a matter of public concern. (Mem. Supp. Mot. Dismiss at 8.) Moser responds that abstention is not appropriate because abstaining would insulate the Virginia General Assembly's action from attack merely because it "took the time to provide" a complex regulatory scheme. (Mem. Opp'n at 3.)

- 9 -

Again, the court is not persuaded. The *Burford* doctrine is a narrow one. Federal courts should abstain under *Burford* "only when the importance of difficult questions of state law or the state's interest in uniform regulation outweighs the federal interest in adjudicating the case at bar." *Martin*, 499 F.3d at 365. "While *Burford* is concerned with protecting complex state administrative processes from undue federal influence, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362 (1989).

Moser has not made a claim under state law, nor are his constitutional claims "in any way entangled in a skein of state-law that must be untangled before the federal case can proceed." *Id.* at 361 (quoting *McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187*, 373 U.S. 668, 674 (1963)) (internal quotation marks omitted). "Unlike a claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh[ed] relevant state-law factors"—as was the case in *Burford*—federal adjudication of a purely federal question "would not disrupt the State's attempt to ensure uniformity in the treatment of an 'essentially local problem.'" *Id.* at 362 (quoting *Ala. Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341, 347 (1951)). The fact that this suit may result in an injunction against an application of state law is not itself a sufficient basis to invoke *Burford* abstention. *See Zablocki v. Redhail*, 434 U.S. 374, 379 n.5 (1978) ("[T]here is . . . no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of state policy.").

Because there is no sufficiently weighty countervailing interest in this case to warrant the court's application of *Burford* abstention, the court declines the Board's invitation to apply *Burford* and instead exercises its jurisdiction over this case.

### iii.  The Doctrine of Substantiality

The Board also argues that Moser's claim does not present a *substantial* federal question and thus his claims are insufficient to allow him to invoke this court's jurisdiction. (Mem. Supp. Mot. Dismiss at 9.) Under the doctrine of substantiality, "federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly unsubstantial, or no longer open to discussion." *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) (internal quotation omitted). In support of this argument, the Board points to *Garraghty v. Virginia Retirement System*, 200 F. App'x 209 (4th Cir. 2006), in which the Fourth Circuit applied the doctrine of substantiality to preclude exercise of jurisdiction over a due-process challenge to the VRS. *See id.* at 212. In *Garraghty*, the Fourth Circuit explained,

> Due process requires "notice and an opportunity for hearing appropriate to the nature of the case" before an individual can be deprived of a property interest. The record amply demonstrates that Garraghty received both. When stripped of the alleged due process violation, it is evident that all Garraghty seeks is federal consideration of a state law issue. Because Garraghty has failed to present a substantial constitutional claim, we affirm the dismissal for lack of subject matter jurisdiction.

*Id.* (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). The Board argues that the same reasoning applies here. (Mem. Supp. Mot. Dismiss at 9.)

Moser does not respond to the Boards substantiality argument in so far as it concerns his due-process claim. Rather, he states that he "rests the core of [his] case on the United

States Supreme Court decision in *Timbs v. Indiana*," which concerned an excessive-fines claim under the Eighth Amendment. (Mem. Opp'n at 1.) He subsequently explains, in responding on the merits of his due-process claim, that his challenge with respect to that claim is to "the Commonwealth's truncated appeal process in these forfeiture cases," which denied him the opportunity for "appellate review of constitutional defects in the state's punishment scheme." (Mem. Opp'n. at 3.)

As recited in the Halifax County Circuit Court's ruling, the process Moser received is identical to that at issue in *Garraghty*. Moser received notice of the proceedings, appeared before the Board with his attorney, and had the opportunity to present evidence and argument. (*See* Mem. Supp. Mot. Dismiss, Ex. A at 6–7.) Like *Garraghty*, Moser did not obtain any relief from the Halifax County Circuit Court, and the Supreme Court of Virginia denied certiorari.[4] *See Garraghty*, 200 F. App'x at 211. It therefore appears that Moser received the same process as *Garraghty*, so his due-process claim alone would not allow him to invoke this court's subject-matter jurisdiction. Rather, *Garraghty* would require dismissal for lack of subject-matter jurisdiction on this basis under the doctrine of substantiality. *See id.* at 211–12. But the details of the process that Moser received, and his allegations of why that process was insufficient, are insufficiently developed at this stage for the court to definitively conclude, as a matter of law, that the process was sufficient. In short, Moser's Complaint simply does not allege the elements of due process with enough specificity for the court to determine whether *Garraghty* applies to deprive this court of jurisdiction over Moser's due-process claim. Accordingly,

---

[4] Arguably, Garraghty received less process than Moser. While the circuit court reached the merits of Moser's claims, the circuit court dismissed Garraghty's challenge of the agency determinations, holding that it was not the proper forum to adjudicate those challenges. *See Garraghty*, 200 F. App'x at 211.

because the Eighth Amendment excessive-fines claim requires rejection of the Board's substantiality argument either way, and independent grounds—*res judicata* and the fact that Moser seeks no relief from the Board—exist for granting the Board's motion, the court declines to wade further into the due process claim at this juncture.

With respect to Moser's Eighth Amendment excessive-fines claim, the Board argues that the forfeiture is not excessive because Moser "only forfeits employer-paid contributions and earnings on those contributions" while receiving "a refund for contributions plus interest." (Mem. Supp. Mot. Dismiss at 10.) But the Board's contention that the substantiality doctrine applies to Moser's Eighth Amendment claim because the forfeiture is not excessive improperly conflates the merits of the claim with the court's subject-matter jurisdiction over the case. *See Arbaugh v. Y&H Corp.*, 546 U.S. at 503. This is particularly true because the parties dispute the amount of money subject to forfeiture. (*Compare* Mem. Supp. Mot. Dismiss at 10*, with* Compl. at 3.) On that basis, Moser's Eighth Amendment claim is not insubstantial; rather, it is "something to be litigated and determined." *Reddy*, 38 F.4th at 399.

Because this case is "otherwise within [the court's] jurisdiction" under 28 U.S.C. § 1331, *Hagans*, 415 U.S. at 536, the court has subject-matter jurisdiction over this case.[5] Accordingly, the court will deny the Board's motion to dismiss for lack of subject-matter jurisdiction.

## B.  Failure to State a Claim

While the court concludes that it has subject-matter jurisdiction over Moser's claims, for the reasons explained below, his claims are barred. The Board's motion to dismiss, therefore, must be granted.

---

[5] The court's subject-matter jurisdiction extends to Moser's surviving claim against VRS.

### i. *Res Judicata*

Moser's claims against the Board are barred by *res judicata*.[6] Under the doctrine of *res judicata*, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). *Res judicata* applies where there is "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Pueschel v. United States*, 369 F.3d 345, 354–55 (4th Cir. 2004).

Moser appears to dispute only the first element. He contends that *res judicata* does not apply because his unsuccessful petition for a writ of certiorari does not constitute a final judgment on the merits and "[t]he only state court judgment rendered in this case never dealt with Plaintiff's constitutional arguments because the circuit judge ruled that Plaintiff's constitutional issues would have to be raised elsewhere." (Mem. Opp'n at 2.) Moser is correct that the United States Supreme Court's denial of certiorari is not itself a ruling on the merits, but the denial of his petition for certiorari does have the effect of making the underlying decision final. *See Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711 n.14 (1974) (stating that a final judgment is "one where the availability of appeal has been exhausted or elapsed, and the time to petition for certiorari has passed" (cleaned up)). The question, then, is whether

[6] "Although an affirmative defense such as *res judicata* may be raised under Rule 12(b)(6) 'only if it appears on the face of the complaint,' when entertaining a motion to dismiss on the ground of *res judicata*, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 200) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). Here, as in *Andrews*, Moser "does not dispute the factual accuracy of the record of his previous suit . . . ." *Id.* The court may therefore determine the applicability of the defense without converting the Board's motion to one for summary judgment.

- 14 -

the Halifax County Circuit Court's judgment, which became final when the United States Supreme Court denied certiorari, was "on the merits."

Moser argues that the circuit court judgment was not on the merits because the court expressed hesitation as to whether it was the proper forum to address Moser's constitutional arguments.[7] (*See* Mem. Opp'n at 2.) While that is true, the state-court record, when read in its entirety, clearly shows that the state court set its hesitation aside and ruled on the merits with respect to Moser's constitutional claims. Most notably, the court stated expressly that it "finds the determination by the Board was correct, that there's no due process violation and no excessive penalty violation." (Mem. Supp. Mot. Dismiss, Ex. A at 9–10; *see also id.* at 7 ("I think clearly that he had due process under the law as far as the Constitutional objections of due process."); *id.* at 9 (stating that this case is "distinguishable from" *Timbs*, such that "[t]his is really not an excessive punishment case").)

Because the Halifax County Circuit Court rendered a final judgment on the merits of Moser's constitutional claims and it is undisputed that the remaining elements of *res judicata* are met, Moser's claims against the Board are barred by *res judicata*.[8]

---

[7] Moser does not contend that he didn't bring the constitutional claims in state court; he argues only that the state court didn't rule on those challenges because it did not believe itself to be the correct forum for those arguments.

[8] VRS was not a party to the state court suit, so *res judicata* does not bar Moser's claim against it. (*See* Mem. Supp. Mot. Dismiss, Ex. A at 3.) Even if VRS were in privity with the Board, such that the Board's *res judicata* bar extends to VRS, *see Brooks v. Arthur*, 626 F.3d 194, 200–01 (4th Cir. 2010), *res judicata* is an affirmative defense, and VRS did not raise it in its answer. Fed. R. Civ. P. 8(c)(1). "It is settled that a failure to raise an affirmative defense in the appropriate pleading results in the loss of that defense." *RCSH Operations, L.L.C. v. Third Crystal Park Assocs. L.P.*, 115 F. App'x 621, 629 (4th Cir. 2004). Accordingly, insofar as it ever had it, VRS has waived any *res judicata* defense available to it. Therefore, the court dismisses the claims on *res judicata* grounds only as against the Board and will, at this stage, permit Moser's claims to proceed against VRS.

### ii.  The Board Is Not a Proper Defendant

The Board also argues that the Complaint should be dismissed as against the Board because Moser "seeks no relief from the Board." (Mem. Supp. Mot. Dismiss at 17.) It explains that the Board's sole role in the forfeiture process is to make the determination concerning Moser's eligibility for benefits. (*Id.* at 17–18.) Following that determination and the filing of the requisite form, it asserts that "the handling of Plaintiff's VRS retirement benefits at this juncture is solely the province of VRS." (*Id.* at 18.) Moser does not dispute this but contends that "there would be no forfeiture without the Defendant Board's request to forfeit," which "makes the request jurisdictional in nature." (Mem. Opp'n at 3.) "Moreover," Moser asserts, "Plaintiff is not sufficiently advanced in this litigation to know how Plaintiff's retirement contributions are credited on forfeiture, whether to one of the Defendants, the other, or both. Accordingly, any motion to drop the Board of Supervisors as a defendant is at best premature." (*Id.*)

In his Complaint, Moser asks the court to "enjoin the enforcement of § [51].1-124.13.A of the Code of Virginia in this case as applied to his vested retirement benefits, bar future forfeiture of those benefits, require that [VRS] return to Plaintiff all of his retirement benefits previously forfeited and afford Plaintiff his costs herein expended." (Compl. at 6.) The request for costs is relevant only if the Moser obtains other relief against the Board. The request that his benefits be returned is directed solely at VRS and does not involve the Board.

With respect to the injunction against the enforcement of § 51.1-124.13 and the forfeiture prohibition, the statutory scheme provides that the VRS is the responsible actor. Section 51.1-124.13(C) provides that the VRS "shall implement the relinquishment of benefits

under this title as soon as practicable." The Board is thus correct that it is not involved in any of the relief Moser seeks. Accordingly, even if the claims against the Board were not barred by *res judicata*, the court would alternatively dismiss the Complaint as against the Board on the ground that the Board is not a proper defendant because Moser seeks no relief from the Board.

## IV.   CONCLUSION

For the foregoing reasons, Moser's Complaint fails to state a claim against the Board, and its motion to dismiss will be granted.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 3rd day of October, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE