CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
11/6/2025
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| SAMMIE TODD MOSER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 4:24-cv-00010 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| THE VIRGINIA RETIREMENT ) | By:    Hon. Thomas T. Cullen |
| SYSTEM, ) | United States District Judge |
| ) | |
| Defendant. ) | |

While working as an animal control officer for Halifax County, Plaintiff Sammie Todd Moser ("Moser") regularly pocketed cash payments for pet adoptions that were supposed to be deposited into the County's coffers. In 2022, about a year after he retired, a local grand jury charged him with embezzling public funds. Moser pleaded guilty to two felony embezzlement counts and was sentenced to probation.

Following his conviction, the Board of Supervisors for Halifax County ("the Board") informed Moser of its intent to review the circumstances of his embezzlement convictions to determine if he was still eligible to receive monthly pension benefits through the Virginia Retirement System ("VRS") under a state law that provided for termination of such benefits for any participating government employee convicted of a felony arising from his employment. The Board ultimately concluded that, because Moser had been convicted of felony embezzlement arising from his work as an animal control officer, he was no longer entitled to receive state contributions to his pension under Virginia law. Moser appealed the Board's decision to the Halifax Circuit Court, as he was entitled to do, but that court affirmed the

Board's decision. The law does not provide for any further right of appeal and, shortly thereafter, VRS cut off Moser's pension.

In March 2024, Moser filed this federal suit against the Board and the VRS, arguing that their termination of his pension violated his Fourteenth Amendment right to due process and the Eighth Amendment's prohibition of excessive fines. By Order issued in October 2024, the court granted the Board's motion to dismiss, and Moser's constitutional claims proceeded against VRS only.

Moser and VRS have now filed cross motions for summary judgment on the Eighth and Fourteenth Amendment claims based on stipulated, undisputed facts. As explained below, because the recission of his pension benefits was not a "fine" and because he received more than adequate due process, both of his constitutional claims fail as a matter of law.

## I. BACKGROUND

In its Memorandum Opinion on the Board's motion to dismiss, the court summarized the relevant facts underlying this lawsuit, including the circumstances of Moser's embezzlement and conviction, the Virginia statute governing forfeiture of pension benefits, Va. Code Ann. § 51.1-124.13, and the proceedings that culminated in VRS's decision to terminate Moser's pension benefits. (*See* ECF No. 18.) In the interest of judicial economy, the court will not repeat those details here. It will, however, summarize the parties' Joint Statement of Facts, which they submitted, along with supporting exhibits, to complete the factual record and tee up their dueling motions for summary judgment.

Under Virginia law, an individual who retires from state employment is not entitled to

pension benefits[1] if

> (i) he is convicted of a felony and (ii) the person's employer determines that the felony arose from misconduct occurring on or after July 1, 2011, in any position in which the person was a member covered for retirement purposes under any retirement system administered by the Board. Prior to making any such determination, the employer shall give the person reasonable prior written notice and provide an opportunity to be heard. The employer's determination may be appealed in a manner consistent with subsection B [of this statute], and no further proceedings shall follow the decision of the circuit court.

Va. Code Ann. § 51.1-124.13(A).

Moser was eligible for VRS benefits based on his 29 years of service working in law enforcement and animal control in Virginia. (Joint Stipulation of Facts ("Stipulation") ¶¶ 1–4 [ECF No. 28].) From 1992 until 2008, Moser served as a police officer and sheriff's deputy for three different localities in and around Halifax County. (*Id.* ¶¶ 1–3.) In 2008, he was hired as an animal control officer, and he served in that role until his retirement in October 2021. (*Id.* ¶¶ 4–5.) Shortly after his retirement, Moser began receiving monthly pension benefits of $1,314.94. (*Id.* ¶ 6.)

On September 16, 2022, Moser pleaded guilty to embezzling public funds and embezzling more than $1,000. (*Id.* ¶ 7.) The parties agree that Moser's criminal embezzlement began on January 1, 2018, and continued until April 1, 2021, or only during his time as an animal control officer. (*Id.* ¶ 18.) In January 2023, Moser was sentenced to probation. (*Id.* Ex. 8.)

Approximately one month after his January 2023 sentencing, the Board informed

---

[1] More precisely, they are not entitled to any state contributions to their pension; they are, however, permitted to petition for return of their personal contributions. *See* Stipulation ¶ 17 & Ex. P.

Moser, via letter, of its decision to review his criminal convictions under Virginia Code § 51.1-124.13 at a hearing scheduled for March 6, 2023. (*Id.* ¶ 9 & Ex. I.) In that notice, the Board invited Moser to "submit any letter or narrative prior to the close of business on Friday, March 3, 2023, which addresses why the Board should not make this determination." (*Id.* Ex. I.) In the alternative, the Board advised Moser that he could appear at that hearing in person to make his case. (*Id.*) Moser, through his attorney, submitted a letter to the Board and a separate letter to its attorney, taking issue with the potential termination of his VRS benefits. (*Id.* Ex. J.)

Moser's written appeals were unpersuasive, as the Board, by letter dated March 8, 2023, advised him that it had unanimously found that he had been convicted of a felony and that he had committed that felony while working in a government position covered by the VRS. (*Id.* Ex. K.) This letter informed Moser of his right to appeal the Board's decision to the Halifax Circuit Court; Moser timely noticed an appeal. (*Id.*) On April 5, 2023, the circuit court convened a hearing on the matter. (*Id.* Ex. M.) Moser appeared at that hearing with counsel and argued against the Board's decision. But the circuit court rejected those arguments and entered an order affirming the Board's decision.[2] (*Id.*)

Following the circuit court's order, the Board submitted an Employer Request for

---

[2] Moser attempted to appeal the circuit court's adverse decision to the Virginia Supreme Court, but his appeal was dismissed because the state statute governing this VRS-benefits review process provides that a circuit court's decision on the matter is final and not appealable. *See* Va. Code Ann. § 51.1-124.13(A) ("The employer's determination may be appealed in a manner consistent with subsection B, and no further proceedings shall follow the decision of the circuit court. The employer's determination shall become final 10 calendar days after the date of the initial determination if no appeal is filed, or the date of the decision of the circuit court if an appeal is filed."). After the Supreme Court of Virginia kicked his appeal, Moser filed a petition for writ of certiorari with the United States Supreme Court, but it, too, was denied. *See Moser v. Halifax Cnty. Bd. of Supervisors*, 144 S. Ct. 1033 (2024).

- 4 -

Forfeiture of Member Benefits Form to VRS, requesting that the state agency cancel Moser's monthly pension benefits. (*Id.* Ex. N.) VRS granted that request, and Moser received his last check on June 1, 2023. (*Id.* ¶ 15.)

At the time his monthly benefits were terminated, Moser had $49,390 on deposit in his VRS member account. (*Id.* ¶ 16.) This amount represented the sum of Moser's retirement contributions—five percent of his creditable compensation during his 29 years of service, plus accrued interest. (*Id.*) The parties agree that these employee contributions, plus interest, still belong to Moser, but that Moser, to date, has not sought to have VRS refund this money by submitting the appropriate form and documentation. (*Id.* ¶ 17.)

Instead, Moser brought this suit and, on July 11, 2025, filed for summary judgment, challenging his pension forfeiture on Eighth and Fourteenth Amendment grounds. (*See* Pl.'s Mot. Summ. J. [ECF No. 27].) On July 18, 2025, VRS filed a cross-motion for summary judgment. (*See* Def.'s Mot. Summ. J. [ECF No. 30].) Moser filed a response on August 3, 2025. (Pl.'s Resp. [ECF No. 31]). The court heard arguments on the motions on October 14, 2025. (ECF No. 35.) After a fulsome review of the record, the arguments of the parties, and the governing law, this matter is ripe for disposition.

## II.    STANDARD OF REVIEW

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on

file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In this case, the parties have both moved for summary judgment and submitted a Joint Stipulation of Facts (with corresponding exhibits) for the court's consideration. In so doing, they have conceded that there are no disputes of material fact, and that the court can decide the attendant constitutional issues, and the case itself, as a matter of law.

### III.    ANALYSIS

Moser seeks summary judgment on two grounds, arguing that (1) the forfeiture of his pension, specifically the Commonwealth-funded portion, is an excessive fine in violation of the Eighth Amendment, and (2) he was denied due process under the Fourteenth Amendment before his pension benefits were revoked. The court will address each argument in turn.

**A. Eighth Amendment Claim**

Moser argues that the forfeiture of his VRS-funded pension benefits—even those accrued before he began working as an animal control officer—under § 51.1-124.13 is a "fine" subject to the Eighth Amendment's Excessive Fines Clause. U.S. Const. amend. VIII

("[E]xcessive fines [shall not be] imposed."). Excessive-fine challenges require the movant to demonstrate that (1) there is a "fine" at issue, or the government intends to "extract payments" from an individual as punishment for an offense, and (2) the fine is "grossly disproportional to the gravity of a[n] . . . offense." *United States v. Bajakajian*, 524 U.S. 321, 328, 334 (1998).

Beginning with the first element of *Bajakajian*, the issue of whether forfeiture of state-sponsored pension benefits, especially following a job-related felony conviction, is a fine is a matter of first impression in the Fourth Circuit. But other federal courts have uniformly held that pension forfeiture based on employee misconduct is not a "fine" in the constitutional sense, because these employees did not have a vested property interest in the first instance. *See Bajakajian*, 524 U.S. at 328; *Hopkins v. Okla. Pub. Emps. Ret. Sys.*, 150 F.3d 1155, 1162 (10th Cir. 1998) (citing *Austin v. United States*, 509 U.S. 602, 604 (1993)) ("Implicit in [the] interpretation of the Excessive Fines Clause is the notion that it applies only when the payment to the government involves turning over 'property' of some kind that once belonged to the defendant.").

The Third Circuit, for one, concluded that pension forfeitures are not "fines" in any constitutional sense. In *Dailey v. City of Philadelphia*, the plaintiff was an employee of Philadelphia's court system, serving in multiple positions, for over 30 years. 819 F. App'x 71, 73 (3d Cir. 2020). After she was convicted of stealing funds from her employer, the relevant city agency revoked all of her pension benefits,[3] prompting the plaintiff to file a claim nearly

---

[3] The Philadelphia Code allows the Board of Pensions and Retirement to disqualify a city employee from pension benefits if the employee is found guilty of "[t]heft, embezzlement, willful misapplication, or other illegal taking of funds or property of the City." Phila. Code § 22-1302(1)(a)(.4). The subsequent section states that "no employee . . . shall be entitled to receive any retirement or other benefit or payment of any kind except a return of contribution paid into the Retirement System, without interest, if such employee: (a) pleads or is finally found guilty . . . in any court, to . . . [m]alfeasance in office or employment." *Id.* § 22-1302(1)(a)(.5).

- 7 -

identical to Moser's. *Id.* Observing that, in Pennsylvania, "contract law defines an employee's entitlement to pension benefits," *id.* at 75, the Third Circuit explained that the receipt of pension benefits is subject to conditions precedent:

> [T]he forfeited pension is not property that ever belonged to her . . . . Rather, the disqualification flowed from [the plaintiff's] failure to satisfy *all* conditions necessary to qualify for her pension, when she did not refrain from certain criminal conduct in office as required by [the Philadelphia Code].

*Id.* Accordingly, the court rejected the plaintiff's threshold contention that the forfeiture was a fine. Without a cognizable property interest in her pension, no payment was "extracted" from the plaintiff under the *Bajakajian* two-step inquiry. *Id.* The disqualification of her benefits, therefore, "was not a fine within the meaning of the Eighth Amendment." *Id.* at 76.

At least two other federal courts have reached the same conclusion. Looking to respective state laws on pension forfeiture following an eligible employee's criminal conviction, these courts reasoned that, where receipt of a pension is "contingent on maintaining honorable service," forfeiture following a job-related felony is a breach of contract, not a fine. *See, e.g.*, *Hopkins*, 150 F.3d at 1162 ("When [Defendant] accepted a [work-related] bribe . . . he breached his duty of honorable service. . . . As a result, under Oklahoma law, [Defendant] had no 'vested right' in his pension benefits. . . . [and] the forfeiture of those benefits does not constitute a 'payment' to the state of Oklahoma[.]"); *Hames v. City of Miami*, 479 F. Supp. 2d 1276, 1287–88 (S.D. Fla. 2007), *aff'd*, 281 F. App'x 853 (11th Cir. 2008) (per curiam) ("In the pension context . . . . an employee has no vested property interest in the pension; it is always subject to the statutory forfeiture limitations.").

The overwhelming majority of state courts to address this issue have also reached the same conclusion, particularly where, as in this case, the petitioning employee would be refunded their own contributions.[4] *See State v. Anderson*, 256 A.3d 981, 993–94 (N.J. 2021); *Baumgartner v. Tenn. Consol. Ret. Sys.*, No. M2017-01715-COA-R3-CV, 2018 Tenn. App. LEXIS 584, at *47–57 (Oct. 3, 2018); *Miller v. State Emps. Ret. Sys.*, 137 A.3d 674, 681 (Pa. 2016); *Busbee v. State, Div. Ret.*, 685 So.2d 914, 916–17 (Fla. App. 1996); *Booth v. Sims*, 456 S.E.2d 167, 181 (W. Va. 1994); *Kerner v. State Emps. Ret. Sys.*, 382 N.E.2d 243, 245–47 (Ill. 1978). Only one state court has reached the opposite conclusion. *See Pub. Emp. Ret. Admin. Comm'n v. Bettencourt*, 47 N.E.3d 667, 676 (Mass. 2016) (interpreting Massachusetts law and concluding that state employees "acquire[] a protected [property] interest in the retirement allowance" when they begin making contributions and experience deductions in paychecks).

The above-cited precedent reveals that this court must look to Virginia law to determine if Moser had a vested property interest in his VRS pension even following his criminal misconduct, such that the state, through its termination of that pension, extracted some payment—or "fine"—from him. *See, e.g., Pitts v. Richmond*, 366 S.E.2d 56, 58–59 (Va. 1988) (emphasis omitted) (interpreting the City of Richmond's retirement benefits plan: "The City's promise to pay [service retirement, disability retirement, and death benefits] always has been conditioned upon the happening of an event and upon a specified term of service. . . .

---

[4] This point is highly germane here, as VRS has represented throughout the litigation that Moser is still entitled to a full refund of his $49,390 contribution to his retirement, plus interest. (*See* Stipulation ¶ 17.) At the motions hearing, VRS also cited an opinion from the Virginia Attorney General, which confirmed that an employee convicted of a felony is refunded his own contributions plus interest, constituting "merely the return of the employee's own property . . . not a benefit provided by the Commonwealth." 2015 Va. Att'y Gen. Op. No. 15-008, 2015 VA AG LEXIS 21 (July 31, 2015). As VRS conceded, this would be a different case if Moser were not entitled to a refund of those contributions.

[N]o rights to service retirement benefits vested . . . because neither [plaintiff] satisfied the event requirement[5] to acceptance of the System's promise to pay[.]"); *Nicely v. Bank of Va. Tr. Co.*, 277 S.E.2d 209, 212 (Va. 1981) (interpreting a noncontributory disability benefits plan; "[A] noncontributory plan . . . is in the nature of a unilateral contract. The company makes an offer to its salaried employees in the form of a promise to pay benefits upon the fulfillment of service conditions by them or upon the happening of certain events, such as retirement after a specified term of service . . . . Full performance by the employee constitutes acceptance of the offer, and his previously inchoate rights to receive payments under the plan vest and become legally enforceable.").

While *Pitts*'s and *Nicely*'s analyses did not concern VRS plans specifically—and although the Supreme Court of Virginia has not yet ruled on this exact issue—these courts' application of Virginia contract law to similar types of government retirement benefits is determinative. Like the pension benefits at issue in those cases, Moser's VRS benefits are quasi-contractual benefits that are "conditioned upon the happening of an event": specifically, civil service unadulterated by the commission of a job-related felony under § 51.1-124.13. *Pitts*, 366 S.E.2d at 58. It is undisputed that Moser did not meet that threshold requirement, so VRS was not required to pay its contribution to Moser's pension. As such, its failure to do so did not constitute a fine.

At oral argument, Moser disagreed that principles of state contract law govern this case, and even if they did, Moser's property interest in his pension vested at various stages of his

---

[5] The "event requirement" referred to the plaintiffs' reaching a certain age or suffering a disability under the retirement benefits system of the City of Richmond. *Pitts*, 366 S.E.2d at 59.

employment. Simply put, Moser argued that, insofar as his prior tenure as a local police officer and sheriff's deputy in Halifax County was unblemished by his later embezzlement as an animal control warden, he at least had a vested property interest in the portion of his VRS pension tied to his earlier service. In advancing this argument, Moser relied on the U.S. Supreme Court's decision in *Timbs v. Indiana*, 586 U.S. 146 (2019).

But Moser misreads *Timbs*. In that case, the petitioner brought an excessive-fine challenge to the forfeiture of his vehicle—purchased with funds he received from his late father's life insurance policy—which he later used to facilitate a drug-trafficking crime. *Id.* at 148–49. The sole question presented in *Timbs* was whether the Excessive Fines Clause should be incorporated to the states. *Id.* at 149. The Court held that it should, citing a previous holding that "civil *in rem* forfeitures are fines for purposes of the Eighth Amendment when they are at least partially punitive."[6] *Id.* at 155 (citing *Austin v. United States*, 509 U.S. 602 (1993)). *Timbs* simply has no bearing on the outcome of this case, which involves an entirely different legal issue: the nature of a state employee's property interest, if any, in a pension that is statutorily conditioned on satisfactory civil service. "Section 51.1-124.13 is clear—an employee convicted of a felony arising from misconduct in a VRS-covered position is not 'entitled to *any of the benefits* of Title 51.1.' Moreover, 'any service credit lost from relinquishment of benefits under Section 51.1-124.13(C) shall be ineligible for subsequent purchase.'" 2015 Va. Att'y Gen. Op.

---

[6] The Court briefly commented on civil *in rem* forfeitures because the State of Indiana, as a "fallback" argument, contended "that the [Excessive Fines] Clause does not apply to its use of civil *in rem* forfeitures because . . . the Clause's specific application to such forfeitures is neither fundamental nor deeply rooted." *Timbs*, 586 U.S. at 154, 156. The Court declared the Excessive Fines Clause would be incorporated to the states "regardless of whether application of the Excessive Fines Clause to civil *in rem* forfeitures is itself fundamental or deeply rooted." *Id.* at 156.

No. 15-008, 2015 Va. AG LEXIS 21 (July 31, 2015) (cleaned up). Where an employee's eligibility for VRS benefits is based on the total years of service and age of that employee, the court finds no reason why the condition of honorable service should not also be based on the aggregate. *See* Service Retirement, VRS Employer Manual, VRS, at 3–4 (Sept. 25, 2025) (explaining years of service and age eligibility requirements), *available at* https://perma.cc/26XJ-HM37; *see also Dailey*, 819 F. App'x at 76 (finding that plaintiff's conviction forfeited her entire pension, regardless of her service with the state court system in different, prior positions).

Moser also seizes on the fact that he had received monthly retirements benefits for about a year and half prior to the revocation proceedings to argue that he had a vested property interest, and thus, that the termination worked as a fine. (Stipulation ¶ 6). But this too is foreclosed by the Virginia statute that governs these retirement benefits. Title 51.1 authorizes VRS to recover payments disbursed in error or those procured by fraud and further *requires* VRS to relinquish benefits "as soon as practicable after the employer notifies the Board of its final determination that the member's felony conviction arose from misconduct in any position in which the member was a member in service." Va. Code Ann. §§ 51.1-124.9, 51.124.11, 51.1-124.13(C). Given the governing statute—and well-established precedent that a property interest is based on "a legitimate claim of entitlement," *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)—Moser did not accrue a property interest just because VRS mistakenly began paying his benefits under the belief that he had completed honorable service, only to revoke those illegitimately earned benefits under that statute when they learned otherwise. This statutory scheme is not unique; federal statutes and case law similarly provide

for the revocation of government-provided benefits upon discovery of fraudulent or mistaken disbursement. *See Holman v. Block*, 823 F.2d 56, 59 (4th Cir. 1987) (holding that, when claimants' food-stamp benefits were discontinued over failure to certify income, the interruption of those benefits was not a due-process violation because claimants did not have a "protected interest in the continuous receipt of food stamps"); *Westminster Nursing Ctr. v. Cohen*, No. 5:17-cv-96-FL, 2017 WL 5632661, at *6 (E.D.N.C. Nov. 22, 2017) (noting that, in the context of Medicaid benefits under 42 U.S.C. § 1396(a), "[a] claim to a government-created benefit rises to the level of a property interest when the recipient can assert 'a legitimate claim of entitlement' to the benefit," and that revocation may occur upon "a determination that a recipient is no longer eligible" for the benefits); *Robertson v. Berryhill*, No. 3:16-3846, 2017 WL 1170873, at *1 (S.D.W. Va. Mar. 28, 2017) (noting that, in the context of social security benefits under 42 U.S.C. § 405(u)(1)(A), the receipt of such benefits is "a statutorily created property interest'" but "if the [Social Security Administration] improperly awarded . . . disability benefits in the first place, the termination protects the public fisc and removes only the benefit Plaintiff was never meant to have."); *see also King Cole Foods v. United States*, 561 F. App'x 444, 445 (6th Cir. 2014) (rejecting claimant's Eighth Amendment challenge after it was disqualified from accepting federal food-stamp benefits because "the loss of an administratively granted privilege to process third-party federal benefits" is not a fine in Eighth Amendment context); *Barcia v. Sitkin*, 367 F.3d 87, 107–08 (2nd Cir. 2004) ("*Goldberg* [*v. Kelly*, 397 U.S. 254 (1970)] stands for the proposition that a notice of hearing must identify a sufficient basis for a claimant's *disqualification* or *ineligibility* for benefits[.]"). Moser was on notice, from the outset of his participation in VRS, that his retirements benefits—all of them—were subject to forfeiture

upon a conviction for a job-related felony.

But this argument is also somewhat of a red herring; even if Moser's interest in his pension benefits did vest upon his retirement (or any other point prior to his conviction), they vested "subject to the conditions in the forfeiture statute." *Hames*, 479 F. Supp. at 1288. In reviewing a similar provision in Florida law, one court found "no merit" in arguments similar to Moser's

> because, when [the employee] voluntarily elected to become a member of the [state retirement program], the governing statutes contained the express provision that conviction for bribery in connection with one's employment results in forfeiture of pension rights. Therefore, the forfeiture provision was a part of the pension contract between the [employee] and the state, and to the extent that his rights vested . . . , they vested subject to this provision.

*Busbee*, 685 So. 2d at 916 (citing *Steigerwalt v. City of St. Petersburg*, 316 So. 2d 554, 556 (Fla. 1975)).

Moreover, it would make little sense to find that, after retirement, the forfeiture provisions of the statute are no longer in effect. Such a reading "would unfairly advantage those corrupt and felonious [state] employees who are fortuitous enough to avoid detection of their crimes until after they leave the [state's] employ: a result which would be both absurd and unreasonable." *Horsley v. Philadelphia Bd. of Pensions & Ret.*, 546 A.2d 1115, 1118 (Pa. 1988). "[U]nder [Moser's] theory, an employee need only retire prior to his conviction of a felony in order to render the entire statute meaningless. Certainly such easy circumvention of the law's purpose cannot have been intended." *Kerner*, 382 N.E.2d at 245–47.

In a final attempt to avoid what seems self-evident, Moser contends that his pension forfeiture is a fine because the dictionary definition of "punishment" includes "a fine, penalty,

confinement, or loss of property, right or privilege." (Pl.'s Mot. Summ. J. at 4.) As it goes, he urges the court to find that § 51.1-124.13 imposes an excessive fine because the forfeiture is, abstractly, "punishment." *Id.* This argument is meritless, and in any event, would only get Moser half-way; "fines" are not prohibited by the Eighth Amendment, only "excessive" ones. Ultimately, Moser has not carried his burden of showing, at the outset, that his pension forfeiture under § 51.1-124.13 is a fine subject to Eighth Amendment scrutiny.[7] VRS is therefore entitled to judgment as a matter of law on this issue.

### B. Fourteenth Amendment Claim

Moser also contends that his Fourteenth Amendment rights were violated because he was denied procedural due process before his pension benefits were revoked by the Board. (Pl.'s Mot. Summ. J. at 3–4.) Relatedly, he argues that, without a right to appeal the circuit court's determination, § 51.1-124.13 is unconstitutional. Neither claim has any merit.

At the threshold, for the deprivation of pension benefits to be subject to due process considerations, these benefits must first be regarded as property interests. *See* U.S. Const. amend. XIV, § 1; *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015) ("To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law."). But as explained in detail above, Moser did not have a vested property interest in his pension, so his due process claim fails on this ground alone. *See Prieto*, 780 F.3d at 248 ("Because we conclude that Prieto

---

[7] As Moser has not satisfied the first step of *Bajakajian*, the court will not proceed with the second inquiry of determining whether the fine was the fine is "grossly disproportional to the gravity of a[n] . . . offense." 524 U.S. at 328, 334.

cannot establish a protected liberty interest, we need not consider the sufficiency-of-process requirement.").

But even if Moser were to persuade the court that he "possessed a property interest in his retirement" (Pl.'s Mot. Summ. J. at 4), he received all process that was due.[8] "At bottom, procedural due process requires fair notice of impending state action and an opportunity to be heard[.]" *Snider Int'l Corp. v. Town of Forest Heights, Maryland*, 739 F.3d 140, 146 (4th Cir. 2014) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). "Notice and the hearing are two distinct features of due process[] and are thus governed by different standards." *Snider*, 739 F.3d at 146.

As to the first element, notice is adequate if it is "reasonably calculated to convey information concerning a deprivation"; a letter sent through U.S. Mail specifying the parties and the charges against the individual, for example, is generally sufficient. *Id.* Second, to determine whether an individual was afforded a sufficient opportunity to be heard, courts weigh three factors:

> (1) the private interest involved, (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) the state interest, including fiscal and administrative burdens imposed by additional process.

*Id.* at 140 (quoting *Mathews*, 424 U.S. at 335). Where an individual has been allowed to inspect evidence, call witnesses, or present rebuttal evidence at a hearing—especially in cases involving the loss of state-provided benefits, employment, and the like—the Fourth Circuit has seldom

---

[8] It is worth repeating that all that Moser forfeited was *the state's contributions to his retirement*, not, as he argues, his entire retirement.

- 16 -

found constitutional deficiencies. *See, e.g.*, *Garraghty v. Va. Ret. Sys.*, 200 F. App'x 209, 212 (4th Cir. 2006) (finding, in the context of terminating retirement benefits, multiple administrative hearings and subsequent appeal to circuit court constituted sufficient opportunity to be heard); *Goodrich v. Newport News Sch. Bd.*, 743 F.2d 225, 227 (4th Cir. 1984) (finding, in the context of terminating public-school employment, that teacher was given the opportunity to challenge that termination at a hearing and pre-hearing conferences); *cf. Mallette v. Arlington Cnty. Empls. Supplemental Ret. Sys. II*, 91 F.3d 630, 641 (4th Cir. 1996) (finding plaintiff was deprived of due process because she was misled to believe that her administrative hearing was a formality, rather than an adversarial proceeding, and thus could not meaningfully evaluate her need for counsel or to prepare a defense).

Here, Moser clearly received adequate notice.[9] As stated in the Joint Stipulation of Facts, the Board provided Moser, via mail, "with written notification that it was reviewing the circumstances surrounding his felony convictions to determine if the convictions arose from job-related misconduct" on February 7, 2023, following his January 2023 convictions. (Stipulation ¶ 9 and Ex. I (cleaned up).) Moser was further informed that the Board's decision could result in "forfeiture of [his] VRS benefits in accordance with Virginia Code § 51.1-124.13." (*Id.*) The Board informed Moser of the adversarial nature of the proceedings and the consequences of an unfavorable finding, such that he understood the purpose of the hearing and retained counsel. And it cannot be overlooked that Moser, through counsel, advised the

---

[9] Moser has raised this due-process argument several times below, and both the court and the Halifax County Circuit Court have repeatedly found the Board's notice and hearing procedure constitutionally adequate. *See Moser v. Halifax Cnty., VA, Bd. of Supervisors*, No. 4:24-cv-10, 2024 WL 4381165, at *6 (W.D. Va. Oct. 3, 2024).

Board *prior to the hearing* of his position that its proposed action violated the Eighth Amendment, and that he appeared at the hearing in question with his attorney. (*See* Stipulation ¶ 10 & Ex. J, K.)

Moser also received an adequate opportunity to be heard before his pension benefits were revoked. Considering the *Mathews* factors, the second (the risk of erroneous deprivation) and third (the governmental interest) carry particular weight.[10] Moser faced a minimal "risk of erroneous deprivation . . . through the procedures used." *Id.* at 333. Notably, the Board advised Moser that it would provide him with "a reasonable opportunity to be heard," and offered him the opportunity to "submit any letter or narrative . . . which addresses why the Board should not make this determination," which would "be presented to the Board during their decision making discussions." (Stipulation Ex. I.) Alternatively, it allowed Moser to appear at the Board's hearing, and on March 6, 2023, he did—with counsel. (*See id.* Exs. I & K.) In other words, Moser was informed of his right to present a defense, was present for the Board's deliberations, and, indeed, exercised his fundamental right to tell "his side of the story." *Loudermill*, 470 U.S. at 545; *see also Garraghty*, 200 F. App'x at 212; *cf. Mallette*, 91 F.3d at 641. Finally, the Board had an interest in assessing Moser's entitlement to state-sponsored benefits following his conviction—and in conserving administrative resources generally—but it balanced that interest with Moser's right to due process. Therefore, in addition to receiving

---

[10] For the first factor, courts consider whether an individual has a "substantial" interest in retaining the private interest. *Kirk v. Comm'r of S.S.A.*, 987 F.3d 314, 323 (4th Cir. 2021) (identifying retaining disability benefits as a substantial private interest). While an individual has an interest in retaining his pension benefits—though perhaps not as substantial as retaining life-sustaining disability benefits—the court again emphasizes that Moser's interest in his pension was always contingent on honorable service to Halifax County, which, it is undisputed, he plainly did not fulfill. This factor therefore weighs against Moser's due process claim.

sufficient notice of the Board's determination hearing and its purpose, Moser received an adequate opportunity to be heard at the hearing. Due process requires no more.

Lastly, the court turns to Moser's contention that § 51.1-124.13 is "defective[,] because it purports to declare final decisions that are decided on constitutional issues." (Pl.'s Mot. Summ. J. at 5.) There is no constitutional right to appeal either a civil or criminal judgment, unless provided by statute. *See Abney v. United States*, 431 U.S. 651, 656 (1977) ("[I]t is well settled that there is no constitutional right to an appeal."); *U.S. v. Pridgen*, 64 F.3d 147, 148 (4th Cir. 1995) ("Because the right to appeal is not protected by the Constitution, any right to appeal must be found in an applicable statute."); *U.S. v. Sine*, 461 F. Supp. 565, 568 (D.S.C. 1978) ("[T]here is no constitutional right to appeal, but there is a statutory right to appeal."); *Robert & Bertha Robinson Family, LLC v. Allen*, 810 S.E.2d 48, 56 (Va. 2018) (stating that in civil cases, "'[t]he right of appeal is statutory'" (quoting *Brooks v. Epperson*, 178 S.E. 787, 788 (1935))). And § 51.1-124.13 provides that circuit court decisions are "final and shall not be appealable," establishing that a statutory right of appeal in this instance has not "otherwise [been] provided by law." *Id.* Until the Virginia General Assembly speaks differently or amends the Code further, the circuit courts of Virginia are the proper, final resting places for pension-forfeiture decisions.

In sum, because Moser received adequate notice and opportunity to be heard at the Board's hearing, and because there is no stand-alone constitutional right to appeal an adverse state-court decision, VRS is entitled to judgment on this issue as well.

## IV. CONCLUSION

For the foregoing reasons, the court will deny Plaintiff's motion and enter summary judgment in Defendant's favor.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 6th day of November, 2025.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE